IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ANGELLA DAVIS**, *et al.*, | Case No. 3:16-cv-1973-SI |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **LAUREL MEDICAL SERVICES CORPORATION, dba CHARIOT**, *et al.*, | |
| Defendants. | |

Joshua M. Wolf, WOLF LEGAL, LLC, 220 NW 8th Avenue, Portland, OR 97209. Of Attorneys for Plaintiffs.

Clifford S. Davidson and Kimberlee Petrie Volm, SUSSMAN SHANK LLP, 1000 SW Broadway, Suite 1400, Portland, OR 97205. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs bring this putative class and collective action against Defendants Laurels Medical Services Corporation (dba Chariot) ("Chariot"), and Shiraz Mir, Sheharyar Mir, and Masooma Mir (collectively, "Individual Defendants") (all defendants collectively, "Defendants"). In their First Amended Complaint, Plaintiffs allege six claims for relief: (1) violation of the Fair Labor Standards Act[1] ("FLSA") for failure to pay overtime; (2) violation of FLSA for retaliation against employees for filing complaints alleging violations of FLSA or for making a wage claim, expressing an intention to file a wage claim, or discussing, inquiring

---
[1] 29 U.S.C. § 201, *et seq.*

about, or consulting an attorney about a wage claim; (3) violation of Oregon Revised Statutes ("ORS") § 653.261 and Oregon Administrative Rules § 839-020-0030 for failure to pay overtime; (4) violation of ORS § 652.355 for making a wage claim, expressing an intention to file a wage claim, or discussing, inquiring about, or consulting an attorney about a wage claim; (5) violation of ORS § 652.240 for Defendants' failure to pay Plaintiffs' the hourly wage required under the McNamara-O'Hara Service Contract Act of 1965 ("SCA");[2] and (6) violation of ORS § 652.140 for discharging Plaintiff Lopez and failing timely to pay him overtime and prevailing wages.

Defendants move to dismiss all of Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted. For the reasons discussed below, Defendants' motion is granted in part. Because Chariot has filed for bankruptcy, however, claims against Chariot are stayed. Accordingly, Plaintiffs may elect to stay this case in its entirety or to pursue their claims against the Individual Defendants, including the dismissed claims by filing a Second Amended Complaint, with the understanding that claims against Chariot in any Second Amended Complaint are stayed.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-*

---

[2] 41 U.S.C. § 351, *et seq.*

*Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND

Chariot is a federal contractor providing transportation services to persons in wheelchairs pursuant to a contract with the United States Department of Veterans Affairs. Plaintiffs are either currently employed or were previously employed by Chariot as drivers of Chariot's shuttle buses. Based on the duties performed by Plaintiffs, they should have been categorized as "Shuttle Bus Drivers" under the SCA, which entitled them to a minimum wage of $15.36 per hour during the relevant time period. Instead, Plaintiffs were paid between $11.15 and $13.15 per hour.

When hired, Plaintiffs were told they would work a minimum of 25 hours per week, but could work more than 40 hours per week, including time "on call." Plaintiffs allege that they

PAGE 3 – OPINION AND ORDER

were frequently instructed by Chariot's central dispatcher to arrive early at work, be on call for work, or remain late at work. Plaintiffs also allege that during certain of these times they were advised not to accurately clock-in or clock-out. Chariot's managers also contacted Plaintiffs by telephone and text when Plaintiffs were not at work, and Plaintiffs were not allowed to clock-in for that time. Accordingly, Plaintiffs allege that Chariot had a policy and practice of: (a) failing to pay wages due and owing for hours that Shuttle Bus Drivers were required to report to work, be ready to perform work, or actually perform work, (b) paying wages lower than the wage scale required by law, (c) failing to pay Shuttle Bus Drivers the overtime premium due for overtime worked, and (d) failing to timely pay the full amount of a Shuttle Bus Driver's earned wages, including overtime, upon such driver's termination of employment.

## DISCUSSION

### A. Overtime Claims

To plead a claim under the FLSA, "a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644-45 (9th Cir. 2014), *as amended* (Jan. 26, 2015). Although "the pleading of detailed facts is not required," a plaintiff must plead sufficient facts to demonstrate the plausibility of his or her claim. *Id.* at 645; *see also Starr*, 652 F.3d at 1216. "A plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Landers*, 771 F.3d at 645. "[B]ecause most of ORS chapter 653 (Oregon's minimum-wage law) is patterned after the FLSA, federal regulations and case law are 'instructive' in interpreting that

chapter." *Nkrumah v. City of Portland*, 261 Or. App. 365, 381 (2014) (emphasis omitted). Accordingly, the Court evaluates both claims under the same legal standards.

Defendants argue that Plaintiffs assert only general, conclusory allegations that they were entitled to overtime wages for which they were not paid. Defendants contend that Plaintiffs' allegations that Defendants required Plaintiffs to come in early, be on call, or work late and were "advised" not to clock "certain" of that time is vague, particularly in the context of employees who are alleged to work only 25 hours per week.

Plaintiffs respond that their allegation that they "worked hours in excess of forty (40) hours per week without receiving overtime compensation as required under both federal and Oregon law" and that Defendants repeatedly miscalculated Plaintiffs' paychecks and paid Plaintiffs for fewer hours than they worked are sufficient allegations. The Court disagrees. These allegations are conclusory, merely recite some of the elements of a cause of action under the FLSA, and do not contain the requisite sufficient allegations of *underlying facts*. *Starr*, 652 F.3d at 1216.

Plaintiffs further argue that the general allegations that they had to arrive early, stay late, respond to telephone calls and texts, and remain on call, some of which was off-the-clock, also are sufficient allegations. As the Ninth Circuit in *Landers* explained, however:

> Notably absent from the allegations in Landers's complaint, however, was any detail regarding a given workweek when Landers worked in excess of forty hours and was not paid overtime for that given workweek and/or was not paid minimum wages. Although plaintiffs in these types of cases cannot be expected to allege "with mathematical precision," the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages. Landers's allegations failed to provide "sufficient detail about the length and frequency of [his] unpaid work to support a reasonable inference that [he] worked more than forty hours in a given week."

> Instead, as in *Nakahata*, Landers "merely alleged that [he was] not
> paid for overtime hours worked . . . ." *Id.* Although these
> allegations "raise the possibility" of undercompensation in
> violation of the FLSA, a possibility is not the same as plausibility.

*Landers*, 771 F.3d at 646 (alterations in original) (citations omitted).

Plaintiffs' allegations discussed above do not contain any detail regarding any *given* workweek when any of the plaintiffs worked in excess of forty hours. For employees who were informed that they would work a minimum of 25 hours per week, the Court cannot sufficiently determine what, if any, week they may have worked more than 40 hours based on telephone calls, texts, on call time, or arriving at work early or staying late. Plaintiffs do not attempt to estimate any amount of time they spent before or after work, on call, on the telephone, or texting off-the-clock. Although mathematical precision is not required, some general estimation would assist in showing sufficient detail to support a reasonable plausibility that Plaintiffs worked more than 40 hours in a given week, at least for a particular week when Plaintiffs worked on-the-clock hours that would then total more than 40 hours.

There is one exception, however, in Plaintiffs' allegations. Plaintiffs allege with respect to Plaintiff Angella Davis that for the pay period of June 6, 2016 through June 19, 2016, Ms. Davis worked 33.5 hours in the first week and worked 45 hours in the second week. Thus, although she worked only 78.5 hours in the two-week pay period, she worked more than 40 hours in one week. Accordingly, Ms. Davis has sufficiently alleged a given week in which she worked more than 40 hours and was not paid overtime wages. Defendants' motion is denied with respect to Ms. Davis's overtime claims. Defendants' motion is granted as to the overtime claims of all other Plaintiffs.

B.  Retaliation Claims

   1.  FLSA

In Claim Two, Plaintiffs allege retaliation in violation of the FLSA. The FLSA makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a). Filing a complaint under this provision includes filing a complaint with the Department of Labor ("DOL"), a federal court, or the employer. *Lambert v. Ackerley*, 180 F.3d 997, 1004-05 (9th Cir. 1999). A complaint may be filed orally or in writing. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.*

Plaintiffs allege that:

> 91.  Mr. Lopez was fired, and Mr. Blake was demoted, from the position of lead Shuttle Bus Driver in retaliation for either making a wage claim, expressing an intention to file a wage claim, or discussing, inquiring about, or consulting an attorney about a wage claim. Ms. Davis was repeatedly admonished by Chariot's management and ultimately written-up in retaliation for either making a wage claim, expressing an intention to file a wage claim, or discussing, inquiring about, or consulting an attorney about a wage claim.
>
> 92.  Ms. Davis was also threatened by a member of Chariot's management in retaliation for either making a wage claim, expressing an intention to file a wage claim, or discussing, inquiring about, or consulting an attorney about a wage claim, when such manager stated: "I know there's this lawsuit and stuff. But I just don't want you to pee on an electric fence."

ECF 35 at 20 (Am. Compl.).

Expressing an intention to file a wage claim, discussing or inquiring about a wage claim, and consulting an attorney about a wage claim are not a basis for a retaliation claim under the FLSA. Plaintiffs' disjunctive allegations that they were retaliated against for making a wage claim *or* any of these other actions that cannot form the basis of an FLSA retaliation claim are insufficient to state a claim for retaliation.

Moreover, even if the Court were to consider everything after "making a wage claim" as extraneous (which the Court does not because it would materially change the meaning of Plaintiffs' allegation), alleging that Plaintiffs were retaliated against for "making a wage claim" is conclusory and insufficient to plausibly state a claim. The FLSA requires that the complaint be filed—orally or in writing, with Chariot, the DOL, a federal court, or someplace else—and Plaintiffs must allege sufficient *underlying facts* regarding the alleged complaint that they purportedly filed. *Starr*, 652 F.3d at 1216. Simply stating that Plaintiffs made a "wage claim" fails to do so.

**2. Oregon Law**

Plaintiffs also assert a retaliation claim under ORS § 652.355. This statute provides, in relevant part:

> (1) An employer may not discharge or in any other manner discriminate against an employee because:
>
> (a) The employee has made a wage claim or discussed, inquired about or consulted an attorney or agency about a wage claim.

Or. Rev. Stat. § 652.355.

Similar to Plaintiffs' FLSA claim, Plaintiffs merely "recite the elements of [this] cause of action" without providing "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr*, 652 F.3d at 1216. Legal

conclusions couched as factual allegations are insufficient to survive a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678-79.

**C. Hourly Rate Claim**

Defendants move to dismiss Plaintiffs' Fifth Claim for Relief, brought under ORS § 652.240. This statute provides: "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

Defendants argue that although Plaintiffs style this as a claim under Oregon law, it actually constitutes a claim for relief under the SCA. Because there is no private right of action under the SCA, Defendants contend that Plaintiffs cannot bring the claim. Defendants argue, in the alternative, that even if this claim is brought under Oregon law, there is no private right of action to enforce § 652.240.

Plaintiffs allege that "Executive Order 13658 mandates that DOL issue regulations pursuant to the [SCA] requiring all federal contractors to pay their workers the wage rate listed on the applicable DOL wage determination (a "Wage Determination"), according to a worker's classification as set forth in such DOL Wage Determination." ECF 35 at 25 (Am. Compl. ¶ 120). Plaintiffs further allege that pursuant to this requirement the DOL required Shuttle Bus Drivers to be paid $15.36 per hour. *Id.* (Am. Compl. ¶ 123). Plaintiffs then allege that because Chariot was a federal contractor during the relevant time period it was subject to this requirement and was required to categorize Plaintiffs as Shuttle Bus Drivers and pay them $15.36 per hour. *Id.* at 25-26 (Am. Compl. ¶¶ 122-24). Plaintiffs also allege that Defendants willfully failed to pay Plaintiffs the required wage of $15.36 per hour and this failure violated § 652.240. *Id.* at 27 (Am. Compl. ¶ 127).

In response to Defendants' motion, Plaintiffs argue that their claim is not a disguised SCA claim because it is the Executive Order and not the SCA that serves as the underlying authority for the violation of §652.240. Plaintiffs also argue that the Court should find a private right of action under § 652.240.

The Court is not persuaded by Plaintiffs' argument that it is the Executive Order and not the SCA that serves as the underlying authority for Plaintiffs' § 652.240 claim. First, Plaintiffs' allegations are that Executive Order 13658 mandates regulations be issued pursuant to the SCA, and those regulations, which are pursuant to the SCA, are what Plaintiffs allege Defendants violated. Thus, based on Plaintiffs' allegations, it is the SCA that serves as the underlying statutory authority for purposes of § 652.240.

Second, Executive Order 13658 was signed February 12, 2014, and was effective only for "new" contracts, primarily those for which a solicitation was issued on or after January 1, 2015.[3] Exec. Order No. 13658, 79 Fed. Reg. 9,851 (Feb. 12, 2014). Plaintiffs do not allege facts sufficient to demonstrate that Executive Order 13658 applies to any contract involving Chariot at issue in this case.

Finally, Plaintiffs' allegations regarding Executive Order 13658 and the SCA are legal conclusions that the Court does not accept as true. Plaintiffs allege that Executive Order 13658 mandates that the DOL issue regulations pursuant to the SCA requiring federal contractors to pay employees wages under the applicable Wage Determination for an employee's job classification. Executive Order 13658, however, establishes a base federal minimum wage and does not

---

[3] The Court may take judicial notice of matters of public record as long as the facts contained in those records are not subject to reasonable dispute. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

reference minimum wages by job classification. The only reference in Executive Order 13658 to its implementing regulations and the SCA is:

> Any regulations issued pursuant to this section should, to the extent practicable and consistent with section 8 of this order, incorporate existing definitions, procedures, remedies, and enforcement processes under the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.*; the Service Contract Act, 41 U.S.C. 6701 *et seq.*; and the Davis-Bacon Act, 40 U.S.C. 3141 *et seq.*

*Id.* at 9,853. This does not create the "mandate" described by Plaintiffs. The Court finds that the SCA is the statutory authority underlying Plaintiffs' claim under ORS § 652.240.

The SCA "requires government contractors to pay service employees minimum wages and benefits determined by the Secretary of Labor." *Sutton v. Double Day Office Servs., Inc.*, 121 F.3d 531, 533 (9th Cir. 1997). Under the SCA, employees are restricted to administrative channels when seeking remedies for violations of the Act. *Id.* "The SCA does not confer a private right of action to employees; the Secretary of Labor has the exclusive right to enforcement. Employees have no standing to enforce their claims against employers for failure to pay SCA-required wages." *Id.* (citation omitted). "[A] party may not bring an action for the equivalent of SCA damages under the guise of another statute." *Id.*

Plaintiffs' argument that their claim is not an SCA claim under the guise of ORS § 652.240 is contravened by the Ninth Circuit's analysis in *Sutton*. The Ninth Circuit noted in *Sutton* that when the contract at issue is governed by the SCA, if any "claims are for damages to [the plaintiff] because [the plaintiff] was not paid SCA-required wages, [the plaintiff] lacks standing to pursue those specific claims." *Id.* Plaintiffs allege precisely these facts—that they are

service employees working pursuant to Chariot's contracts with the federal government that are governed by the SCA, and that Plaintiffs were not paid their SCA-required wages.[4]

In finding that the plaintiff in *Sutton* was not bringing the equivalent of a SCA claim, the Ninth Circuit also noted that "[i]f his action were equivalent to an SCA action, then his damage would be his lost wages due to Double Day's failure to pay prevailing wages." *Id.* at 534. Here, Plaintiffs seek those exact damages—their lost wages due to Defendants' alleged failure to pay prevailing wages. The Ninth Circuit also explained a further difference between an SCA claim and the *qui tam* False Claims Act ("FCA") claim alleged in *Sutton*—the failure to pay prevailing wages would be an SCA violation but not a violation of the FCA. *Id.* It was the making of a false statement, that the employer had complied with the SCA, that allegedly violated the FCA. *Id.* Thus, the Ninth Circuit concluded that "[b]ecause Sutton's *qui tam* claim under the FCA is based on different actions and for different damages than a claim under the SCA would be, his suit is not barred by the SCA's bar on private rights of action." *Id.*

Plaintiffs' allegations are distinguishable from those in *Sutton* and indeed are the type of allegations that the Ninth Circuit in *Sutton* discussed as being barred by the SCA. Plaintiffs allege the same actions and the same damages as a claim under the SCA. Plaintiffs allege that Defendants should have categorized Plaintiffs as Shuttle Bus Drivers as that term is used by the DOL and paid Plaintiffs the prevailing wage as required by the DOL, $15.36. Thus, Plaintiffs do not have standing to bring this claim. This claim is dismissed with prejudice.

---

[4] Even if the SCA were not the statutory authority and the Executive Order provided the underlying authority, as Plaintiffs argue, the Court's conclusion would not change because the contract at issue in this case is governed by the SCA and thus the ruling in *Sutton* applies regardless of the Executive Order.

### D. Pay Upon Discharge Claim

Plaintiffs' sixth claim is brought only on behalf of Mr. Anthony Lopez. Plaintiffs allege that Defendants violated ORS § 652.140 by not paying Mr. Lopez all of his wages due and owing upon his termination. The alleged unpaid wages, however, are the alleged wages due because Defendants did not pay Mr. Lopez the $15.36 prevailing wage Plaintiffs allege Mr. Lopez should have been paid as a Shuttle Bus Driver, and the alleged overtime wages Plaintiffs allege Mr. Lopez should have been paid for the time he had to work before and after work, on call, and responding to telephone calls and texts. Thus, Plaintiffs are seeking recovery under § 652.140 for the same conduct for which they seek recovery under other statutes. Plaintiffs can only recover "one penalty under Oregon law for the same employer misconduct." *Mathis v. Hous. Auth. of Umatilla Cty.*, 242 F. Supp. 2d 777, 788 (D. Or. 2002) ("[Defendant] committed only one wrongful act, namely not paying Mathis overtime wages. A violation of the overtime statute does not automatically create a second violation of the statute requiring prompt payment of all wages due and owing at termination when an employee quits or is terminated."); *see also Berger v. DIRECTV, Inc.*, 2015 WL 1799996, at *11 (D. Or. Apr. 16, 2015); *Cooper v. Thomason*, 2006 WL 2993376, at *4-5 (D. Or. Oct. 19, 2006). Thus, Mr. Lopez cannot base this claim on his alleged overtime wages due, because that is the basis for his Oregon overtime statute claim.

The Court, however, dismisses with prejudice Plaintiffs' prevailing wage claim as being an SCA claim under the guise of an Oregon statutory claim. Therefore, Mr. Lopez is not attempting to recover another penalty for the alleged failure to pay a prevailing wage. Defendants' argument that Mr. Lopez has a "simultaneous" claim relating to failure to pay him prevailing wages at termination is rejected.

Defendants also argue, however, that Plaintiffs fail to allege sufficient facts demonstrating willfulness. The Court disagrees. Plaintiffs allege that on or about September 6, 2016, Defendants distributed a notice to all employees that made it clear that "although Defendants believe that the Shuttle Bus Drivers are entitled to a prevailing wage of $15.36 per hour, Chariot was nevertheless going to continue to pay Shuttle Bus Drivers at a lower pay rate of $11.55 per hour." ECF 35 at 14 (quotation marks and alteration omitted). Because Mr. Lopez is alleging that it was Defendants' failure to pay the $15.36 per hour that resulted in the violation of ORS § 652.140 upon Mr. Lopez's termination, this allegation is sufficient to show willfulness. Defendants' assertion that Plaintiffs need to allege Mr. Lopez's precise termination date is unavailing because regardless of his termination date, this alleged underpayment of his prevailing wage was in effect.

## CONCLUSION

Defendants' Motion to Dismiss (ECF 60) is GRANTED IN PART. Any amended complaint is due not later than 21 days from the date of this Opinion and Order. Any remaining claims or claims asserted in any amended complaint against Defendant Laurels Medical Services Corporation (dba Chariot) are STAYED due to the pending bankruptcy.

**IT IS SO ORDERED**.

DATED this 7th day of May, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge